John W. Carpenter (Cal. Bar No. 221708)
LAW OFFICES OF JOHN W. CARPENTER LLC
829 Baronne Street
New Orleans, LA 70113
T: 415.577.0698
F: 866.410.6248
Email: john@jwcarpenterlaw.com

VICTORIA E. BRIEANT (Bar No. 141519
Law Office of Victoria E. Brieant
4000 Ponce de Leon Boulevard, Suite 470
Coral Gables, FL 33146
Telephone: (305) 413-9026 / Facsimile:  (786) 228-4914
Email: victoria@brieantlaw.com

*Attorneys for Plaintiff*
*Tangle Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Tangle Inc.,**<br><br>    Plaintiff<br><br>    v.<br><br>**Magic Time International Ltd.; and Brown Sales & Marketing LLC**<br><br>    Defendants | Case No.:  3:15-cv-2802-JSC<br><br>**AMENDED COMPLAINT FOR PATENT INFRINGEMENT,  INDUCING PATENT INFRINGEMENT, TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION AND  TRADE DRESS INFRINGEMENT UNDER CALIFORNIA COMMON LAW**<br><br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR PATENT INFRINGEMENT, INDUCING PATENT INFRINGEMENT , TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, AND TRADE DRESS INFRINGEMENT UNDER CALIFORNIA COMMON LAW

Plaintiff, Tangle Inc., complains of and for causes of action against Defendants, Magic Time International Ltd. and Brown Sales & Marketing LLC,, alleges as follows:

### NATURE OF THE CASE

1. This is an action arising under the Patent Laws and Statutes of the United States in which Plaintiff seeks to recover for patent infringement, inducing patent infringement, trade dress infringement and unfair competition, any and all damages and costs flowing therefrom. This action also arises under the statutory and common law of the state of California.

### JURISDICTION AND VENUE

2. Plaintiff files this action against Defendants for trade dress infringement and unfair competition under Section 43(a) of The Lanham Act (15 U.S.C. Section 1125(a)), and for patent infringement claims arising under the patent laws of the United States, and for related claims under the statutory and common law of the state of California. The Court has jurisdiction for trade dress infringement and unfair competition because personal jurisdiction and venue are proper, and Section 43(a) of The Lanham Act (15 U.S.C. Section 1125(a)) creates a federal cause of action for trade dress infringement and unfair competition. The Court has exclusive jurisdiction for the patent infringement claim and the inducement of patent infringement claim, all asserted in this case pursuant to the Patent Laws and Statutes of the United States (e.g., 35 U.S.C. §§ 271, *et seq.* and § 281) including 28 U.S.C. §§ 1331 and 1338(a).

3.     On information and belief, Defendants Magic Time International Ltd. and Brown Sales & Marketing LLC (collectively "Defendants") are subject to personal jurisdiction in the Northern District of California (the "District"), consistent with the principles of due process and the California Long Arm Statute, because Defendants offer the infringing product for sale in this District, have transacted business in this District, have committed and/or induced acts of patent infringement in this District, and/or have placed the infringing product into the stream of commerce through established distribution channels with the expectation that such product will be purchased by residents of this District.

4.     This action arises out of wrongful acts by Defendants within this judicial district and Plaintiff is located and has been injured in this judicial district by Defendant's alleged wrongful acts. Venue is proper in this district under 28 U.S.C §§ 1391 and 1338(a).

## **THE PARTIES**

5.     Plaintiff, Tangle Inc. ("Plaintiff"), is a California Corporation with a principal place of business in South San Francisco, CA. 94080.

6.     Defendant, Magic Time International Ltd.("Defendant Magic Time"), is a Hong Kong Corporation having a principal place of business at Room 618, 6/F, International Plaza, 20 Sheung Yuet Road, Kowloon Bay, Knowloon, Hong Kong.

7.     Defendant, Brown Sales & Marketing LLC ("Defendant Brown Sales"), is a Tennessee Corporation having a principal place of business at 6207 Belle Rive Drive, Brentwood, TN 37027.

**PLAINTIFF'S PATENT**

8. Plaintiff is the owner by assignment of all right, title and interest in and to United States Design Patent D576,235 S which was duly issued on September 2, 2008. A true and correct copy of the design patent is attached hereto and incorporated herein as Exhibit A (hereinafter "'235 Patent"). The '235 Patent is for a football ("Plaintiff's Toy Football"), which is entitled "Football."

**COUNT I**

**(Patent Infringement of U.S. Design Patent D576,235 S
Under 35 U.S.C. § 271, *et. seq.*))**

9. This COUNT is instituted against Defendants for patent infringement (i.e., direct patent infringement) of the '235 Patent.

10. Plaintiff repeats and realleges and incorporates by reference the averments of the preceding paragraphs, as though fully set forth herein.

11. Defendants are infringing and/or have infringed in direct violation of 35 U.S.C. § 271 the '235 Patent in this Judicial District and/or elsewhere in the United States by having knowingly and intentionally manufactured, caused to be produced, distributed, advertised, marketed, offered for sale and/or sold a football ("Defendants' Toy Football") which is substantially similar to Plaintiff's Toy Football in the eye of the ordinary observer, giving such attention a purchaser usually gives. Defendants' Toy Football is marketed under the product name "Squish." Plaintiff's Toy Football is a brand of a toy football which Plaintiff has sold and is currently offering for sale nation wide under the registered trademark Nightball®, which is owned by Plaintiff.

12.     Defendants' aforesaid infringing activities are without Plaintiff's permission or authority.

13.     As a direct and proximate result of Defendants' infringing conduct, Plaintiff has been injured and suffered damages in this Judicial District and/or elsewhere in the United States, and will continue to suffer injury and damages to its business and reputation unless Defendants are restrained by this Court from infringing the '235 Patent.

14.     Given the widespread popularity and recognition of Plaintiff's Toy Football, Plaintiff avers and hereon alleges that Defendants had knowledge of Plaintiff's rights to the design of Plaintiff's Toy Football covered by the '235 Patent, and have intentionally substantially copied the design of Plaintiff's Toy Football on Defendants' Toy Football in an effort to pass off the design of Plaintiff's Toy Football as if it originated, is associated with, is affiliated with, is sponsored by, is authorized by and/or is approved by Plaintiff.

15.     Plaintiff is informed and believes and hereon alleges that Defendants are competitors and have substantially copied Plaintiff's Toy Football in an effort to exploit Plaintiff's reputation in the market.

16.     In light of the foregoing, Defendants' infringement of the '235 Patent has been or is willful and deliberate, and Plaintiff is entitled to recover all damages that Plaintiff has sustained and will sustain as a result of such infringing acts, as well as all gains, profits and advantages obtained by Defendants as a result of such infringing acts, in an amount to be determined, which amount can be trebled under the provisions of 35 U.S.C. § 284.

17. Defendants' acts of infringement of the '235 Patent makes this an exceptional case within the meaning of 35 U.S.C. § 285, and entitles Plaintiff to attorney's fees.

18. Plaintiff is entitled to injunctive relief prohibiting Defendants from infringing the '235 Patent.

## COUNT II
### (Actively Inducing Patent Infringement)

19. This COUNT is instituted against Defendants for actively inducing patent infringement.

20. Plaintiff repeats and realleges and incorporates by reference all of the averments of the preceding paragraphs, which includes those of Count I (direct patent infringement), as though fully set forth herein.

21. Defendants had and have knowledge that they had directly infringed and are directly infringing the '235 Patent.

22. On information and belief, Defendants have induced and are inducing infringement by *inter alia* knowingly and intentionally having distributed and distributing, advertised and advertising, marketed and marketing, offered for sale and selling and/or sold Defendants' Toy Football to others including Toys "R" Us, Inc., One Geoffrey Way, Wayne, NJ 07470, which is substantially similar to Plaintiff's Toy Football in the eye of the ordinary observer, giving such attention a purchaser usually gives.

23. As a direct and proximate result of Defendants' inducing infringement activities, Plaintiff has been injured and suffered damages in this Judicial District and/or elsewhere in the United States, and will continue to suffer injury and damages to its business and reputation unless Defendants are restrained by this Court from inducing infringement of the '235 Patent.

24. In light of the foregoing, Defendants' inducing infringement of the '235 Patent has been or is willful and deliberate, and Plaintiff is entitled to recover all damages that Plaintiff has sustained and will sustain as a result of such inducing infringing acts, as well as all gains, profits and advantages obtained by Defendants as a result of such inducing infringing acts, in an amount to be determined, which amount can be trebled under the provisions of 35 U.S.C. § 284.

25. Defendants' acts of inducing infringement of the '235 Patent makes this an exceptional case within the meaning of 35 U.S.C. § 285, and entitles Plaintiff to attorney's fees.

26. Plaintiff is entitled to injunctive relief prohibiting Defendants from inducing infringement of the '235 Patent.

## COUNT III
### (Trade Dress Infringement – 15 U.S.C. §1125(a))

27. This COUNT is instituted against Defendants for trade dress infringement.

28. Plaintiff repeats and realleges and incorporates by reference the averments of the preceding paragraphs, which includes those of Counts I and II, as though fully set forth herein.

29. Plaintiff has been engaged in the design, distribution, marketing, offering for sale, and sale a brand of a toy football which Plaintiff is currently the owner and is offered nation wide for sale under the registered trademark, Tangle® and/or under the registered trademark Nightball®.

The registered trademark, Tangle® and the registered trademark Nightball® will be collectively referred to hereafter solely as the registered trademark, "Tangle®".

30. Plaintiff's Tangle® brand toy football remains a recognized brand of a toy football in the industry. The popularity of Tangle® brand toy football has increased across the United States. Tangle® brand toy football remains coveted by consumers of toy footballs. This commitment of top quality of Tangle® brand toy footballs by Plaintiff has launched Tangle® brand toy footballs to current level of popularity.

31. Tangle® brand toy footballs are distributed by authorized manufacture's representative to authorized retailers who subsequently sell Tangle® brand toy footballs throughout the United States at point of sale and on the Internet.

32. The Tangle® brand toy football is show below and is characterized, *inter alia*, by:

- a pair of generally blue opposed conically shaped end caps;
- a generally green skeletal football shaped structure coupled to the opposed conically shaped end caps;
- a football shaped internal cavity within the skeletal football-shaped structure;
- plurality of longitudinal ribs extending between the opposed conically shaped end caps;

- a plurality of circumferential ribs extending around at least a portion of an outer periphery of the skeletal structure; and
- a panel disposed between longitudinal ribs and having an exterior contour surface generally similar to the exterior contour surface of the skeletal structure (hereinafter collectively "Plaintiff Toy Football Trade Dress"), as seen here:



33. Plaintiff Toy Football Trade Dress is an original design by Plaintiff and the elements thereof are nonfunctional and their inherently distinctive quality has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Tangle® brand toy football as a source of a high quality toy football.

34. Plaintiff Toy Football Trade Dress has continually appeared on Tangle® brand toy football, which has been featured on Plaintiff's advertising and promotional materials as well as in

the trade publications. Plaintiff has extensively used and promoted the Plaintiff Toy Football Trade Dress, such that it is closely identified with the Tangle® brand toy football and has achieved extensive public recognition.

35. Plaintiff has spent a considerable amount of time, effort, and money in designing developing, advertising, promoting, and marketing the Tangle® brand toy football embodying Plaintiff Toy Football Trade Dress. Plaintiff's efforts have been successful and Plaintiff has sold a substantial amount of Tangle® brand toy footballs bearing Plaintiff Toy Football Trade Dress.

36. Due to its long use, extensive sales, and significant advertising and promotional activities, Tangle® brand toy footballs and Plaintiff Toy Football Trade Dress have achieved extensive acceptance and recognition among the consuming public and trade through the United States.

37. Defendants have manufactured, caused to be produced, distributed, advertised, marketed, offered for sale and/or sold a toy football ("Defendants' Toy Football"), and Defendants' Toy Football bear substantially reproductions of Plaintiff Toy Football Trade Dress, such as to cause a likelihood of confusion as to the source of Defendants' Toy Football.

[INTENTIONALLY LEFT BLANK]

38.     Defendants' Toy Football is shown in the following picture:



39.     Plaintiff is informed and believes and alleges that Defendants have acted in bad faith and that Defendants' acts have misled and confused and were intended to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants' Toy Football with Plaintiff's, or as to the origin, sponsorship, or approval of Defendants' Toy Football by Plaintiff.

40.     Defendants' use of Plaintiff Toy Football Trade Dress is without Plaintiff's permission or authority and in total disregard of Plaintiff's rights to control its intellectual property and Plaintiff Toy Football Trade Dress of Tangle® brand toy footballs.

41.     Defendants' use of Plaintiff Toy Football Trade Dress is likely to lead to and result in confusion, mistake or deception, and is likely to cause the public to believe that Defendants'

Toy Footballs are produced, sponsored, authorized, or licensed by or that are otherwise connected or affiliated with Plaintiff, all to the detriment of Plaintiff.

42. Given the widespread popularity and recognition of Plaintiff Toy Football Trade Dress, Plaintiff avers and alleges that Defendants had knowledge of Plaintiff Toy Football Trade Dress and have intentionally utilized Plaintiff Toy Football Trade Dress on Defendants' Toy Footballs in an effort to pass them off as if they originated, are associated with, are affiliated with, are sponsored by, are authorized by, and/or approved by Plaintiff.

43. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using Plaintiff Toy Football Trade Dress, or any design similarly confusingly similar thereto, and to recover all damages, including attorney's fees, that Plaintiff has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, as well as the costs of this action.

## COUNT IV

### (Federal Unfair Competition)

44. This COUNT is instituted against Defendants for Federal Unfair Competition.

45. Plaintiff repeats and realleges and incorporates by reference all of the averments of the preceding paragraphs, which includes those of Counts I, II and III, as though fully set forth herein.

46 Defendants' use of Plaintiff Toy Football Trade Dress is without Plaintiff's permission or authority and in total disregard of Plaintiff's rights to control its trade dress.

47. Defendants' infringing activities are likely to lead to and result in confusion, mistake or deception, and are likely to cause the public to believe that Plaintiff has produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Plaintiff.

48. Upon information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' Toy Footballs and to injure Plaintiff and reap the benefits of the good will associated with Plaintiff Toy Football Trade Dress.

49. As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiff has been injured and will continue to suffer injury to its business and reputation unless Defendants are restrained by this Court from infringing Plaintiff Toy Football Trade Dress.

50. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using Plaintiff Toy Football Trade Dress, or any designs confusingly similar thereto, and to recover all damages, including attorneys' fees, that Plaintiff has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, as well as the costs of this action.

## COUNT V

**(Trade Dress Infringement under California Common Law)**

51. This COUNT is instituted against Defendants for Trade Dress Infringement under California Common Law.

52. Plaintiff repeats and realleges and incorporates by reference all of the averments of the preceding paragraphs, which includes those of Counts I, II, III and IV, as though fully set forth herein.

53. Defendants' infringement of Plaintiff Toy Football Trade Dress constitutes common law trade dress infringement in violation of the common law of the state of California.

54. Defendants' unauthorized use of Plaintiff Toy Football Trade Dress has caused and is likely to cause confusion as to the source of Defendants' Toy Football, all to the detriment of Plaintiff.

55. Defendants' acts are willful, deliberate, and intended to confuse the public and to injure Plaintiff.

56. As a direct and proximate result of Defendants' willful and unlawful conduct, Plaintiff has been injured and will continue to suffer injury caused by Defendants' infringing conduct, unless they are enjoined by this Court.

57. The conduct herein complained of was extreme, outrageous, and was inflicted on Plaintiff in reckless disregard of Plaintiff's right. The conduct was despicable and harmful to Plaintiff and as such supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of Defendants' conduct, and to deter them from similar such conduct in the future.

58. In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from infringing Plaintiff Toy Football Trade Dress, and to recover all damages, including attorneys' fees, that Plaintiff has sustained and will sustain, and all gains, profits and

advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

## PRAYER FOR RELIEF

WHEREFOR Plaintiff Tangle Inc. respectfully prays for judgment against Defendants, as follows:

1   A judgment against Defendants and all in privity with Defendants that the '235 Patent is valid and enforceable;

2.   A judgment against Defendants and all in privity with Defendants, that the '235 Patent is and/or has been directly infringed, and/or is and/or has been infringed by inducement, by Defendants, and that Defendants are liable as direct patent infringers and/or liable as patent infringers by inducement;

3.   A judgment that Defendants have infringed Plaintiff Toy Football Trade Dress in violation of 15 U.S.C. § 1125 and that the infringement was willful;

4.   An Order granting permanent injunctive relief restraining and permanently enjoining Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons and entities acting by, through, or in concert with any of them, from (and/or inducing) the manufacturing, producing, distributing, advertising, marketing, offering for sale and/or selling a football, which is substantially similar to Plaintiff's Toy Football in the eye of the ordinary observer, giving such attention a purchaser usually gives;

5.   An Order granting permanent injunctive relief restraining and permanently enjoining Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons and

entities acting by, through, or in concert with any of them, are hereby permanently enjoined from using Plaintiff Toy Football Trade Dress or any designs confusingly substantially similar thereto, including, but not limited to:

    a.    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling the Defendants' Toy Footballs or any other products which bear Plaintiff Toy Football Trade Dress or any designs confusingly similar thereto and/or the overall appearance thereof;

    b.    engaging in any other activity constituting unfair competition with Plaintff, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements used or owned by or associated with Plaintiff; and

    c.    committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of Defendants are licensed by, authorized by, offered by, produced by, sponsored by, or in any other way associated with Plaintiff;

6. Ordering Defendants to recall from any distributors and retailers and to deliver to Plaintiff for destruction or other disposition all remaining inventory of all Defendants' Toy Footballs and related items, including all advertisements, promotional and marketing materials therefore, as well as means of making same;

7. Ordering Defendants to recall from any distributors and retailers and to deliver to Plaintiff for destruction or other disposition all molds from which Defendants' Toy Footballs (infringing product(s) including trade dress infringing products) are produced, and remaining

inventory of all Defendants' Toy Footballs and related items, including all advertisements, promotional and marketing materials therefore, as well as means for making same;

8. Ordering Defendants to file with this Court and serve on Plaintiff within thirty (30) days after entry of the injunction a report in writing, under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

9. Ordering an accounting by Defendants of all gains, profits and advantages derived by their wrongful acts;

10. Awarding Plaintiff all of Defendants' profits and all damages sustained by Plaintiff as a result of Defendants' wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate;

11. Increasing the damages up to three times the amount found or assessed under 35 U.S.C. § 284;

12. Awarding treble damages in the amount of Defendants' profits or Plaintiff's damages, whichever is greater, for willful infringement;

15. Finding that this is an exceptional case under 35 U.S.C. § 285 and 15 U.S.C. § 1117 and awarding attorneys' fees there under;

16. Awarding applicable interest (both prejudgment and post judgment), costs, disbursements and attorneys' fees;

17. Awarding Plaintiff punitive damages in connection with its claims under California law; and

18. For such other and further relief which should appear just and equitable to this Court.

**DEMAND FOR JURY TRIAL**

In accordance with Civil Local Rule No. 3-6, and pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury as to all claims in this litigation.

Dated: July 24, 2015                               Respectfully submitted,

/s/ John W. Carpenter
John W. Carpenter (Cal. Bar No. 221708)

LAW OFFICES OF JOHN W. CARPENTER LLC
829 Baronne Street
New Orleans, LA 70113
T: 415.577.0698
F: 866.410.6248
Email: john@jwcarpenterlaw.com

VICTORIA E. BRIEANT (Bar No. 141519
Law Office of Victoria E. Brieant
4000 Ponce de Leon Boulevard, Suite 470
Coral Gables, FL 33146
Telephone: (305) 413-9026
Facsimile: (786) 228-4914
Email: victoria@brieantlaw.com

*Attorney for Plaintiff*
*Tangle Inc.*